**IN THE SUPERIOR COURT OF DELAWARE**

STATE OF DELAWARE,       )
     Plaintiff,         )
                    )
    v.                  )      **Crim I.D. No. 2409006539**
                    )
TYEEM ROANE,         )
     Defendant.       )

Date Submitted: April 16, 2025
Date Decided: June 13, 2025

### ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Tyeem Roane moves to suppress drugs found on his person during a pat down of his outer clothing.[1] Officers with Probation and Parole (hereinafter "Probation") encountered Roane while conducting an administrative search of his co-defendant's residence. When officers attempted to detain Roane he resisted, leading to a pat down where heroin was found in his right jacket pocket. A further search located crack cocaine. The officers were permitted to detain Roane during the administrative search, had proper concern for officer safety, and once he resisted, officers had sufficient justification for patting him down. The heroin found in his pocket, and the additional crack recovered thereafter, were lawfully obtained and the Motion to Suppress is **DENIED.**

---

[1] *State v. Tyeem Roane*, Crim ID No. 2409006539 Docket Item ("D.I.") 13.

1

**Relevant Facts**

Probation officers went to the home of Mateen Brown (hereinafter "Brown"), at East 24th Street in Wilmington, Delaware, on September 12, 2024, after it was reported that Brown had tested positive for morphine, oxycodone, and THC at a recent probation screening.[2]  At the house, Probation conducted a pre-approved administrative search of the residence.  Per policy, members of the Delaware State Police ("DSP") with the Governor's Task Force ("GTF") accompanied Probation, however, Probation was the first to enter the home.

Upon arrival to the residence, Probation was given permission to enter the home by Brown's roommate, who indicated other occupants were upstairs.[3] Probation Officers Barba and Abreu walked upstairs.  Barba located three individuals in a bedroom, one being Brown who was taken into custody by Officer Abreu in the hallway, at the top of the stairs.[4]  While Brown was detained by Abreu, Barba entered the bedroom Brown had just exited.  As Barba entered, Roane pushed past Barba to exit the bedroom.[5]  Barba grabbed Roane's arm and Roane immediately attempted to pull away from Barba, yelling, "I'm not on probation! You can't grab me!"  Roane continued to resist further detention as he continued down

---

[2] State's Response, Superior Court Criminal Docket Item ("D.I.") 16.
[3] Barba's Body Worn Camera (hereinafter "BWC").
[4] *Id.*
[5] *Id.*

the hall to the top of the staircase. With Officer Abreu alone at the top of the staircase taking Brown into custody, Barba testified that he was in fear for her safety and called for additional units with DSP to enter the home for assistance.[6]

Roane was eventually detained at the top of the stairs at which time the officers conducted a pat down of his outer clothing. In Roane's right sweatshirt pocket officers felt several bundles of heroin/fentanyl. Upon this finding, the officers continued their search of his person and located crack cocaine. Specifically, 42 grams of crack and 39 bags of heroin were found in Roane's possession.[7] It was ultimately discovered that Roane had an active capias for his arrest.

Roane was arrested that night and ultimately indicted on felony drug possession charges as a result of the search.[8] On February 18, 2025, Roane filed the instant motion to suppress.[9] The administrative search of Brown's home is not challenged. Defendant's motion only challenges that taking him into custody at the top of the stairs lacked probable cause and "went beyond the scope of reasonableness for what should have occurred during an administrative probation search directed towards another person…."[10] Roane submits officers were not constitutionally

---

[6] D.I. 20.
[7] *Id.*, D.I. 17.
[8] D.I. 4, 10, 12.
[9] D.I. 13.
[10] *Id.*

3

permitted to handcuff and search Roane during an administrative probation search directed towards someone else.[11]

A suppression hearing was scheduled following Roane's motion.[12] At the hearing, the State presented the testimony of Probation Officer Barba and DSP Detective Shaub, who was working with the GTF at the time. Body worn cameras of both officers were introduced into evidence and played. Following the hearing, oral argument was heard. At the hearing, Roane's arguments expanded from the limited challenge put forth in his motion, but all parties agreed that the relevant inquiry is into the detention that first occurred when Barba grabbed Roane's arm as he left the bedroom leading to Roane's initial pat down, revealing the heroin. Roane submits probable cause was required for any detention.

The State argues the officer merely needed a reasonable, articulable suspicion – not probable cause – to detain and handcuff Roane during this search. Further, the State submits Roane's aggressive behavior created probable cause to justify the search. In addition, the State posits concern for officer safety justified the detention and search. As an alternative, the State suggests that the doctrine of inevitable discovery prevents suppression of this evidence, as Roane had a capias, the officers were within their rights to identify him and once identified, would have realized he

---

[11] *Id.*
[12] D.I. 20.

4

was wanted, would have taken him into custody and searched regardless. Roane challenges his detention and search under both the Delaware and Federal constitutions.

## Standard of Review

The Fourth Amendment of the United States Constitution and Article I, Section 6 of Delaware's State Constitution prohibit unreasonable searches of one's person, houses, papers, and effects.[13] Unreasonable searches are those conducted without probable cause.[14] Probable cause is the quantity and quality of facts and circumstances, within a police officer's knowledge, warranting a reasonable officer to conclude that the individual has committed a crime, is currently committing a crime, or will commit a crime in the future.[15] However, officers can conduct a limited search of one's person, without probable cause, when reasonable suspicion exists that the individual is either armed and dangerous, or engaged in criminal activity.[16] Reasonable suspicion is considered a lesser intrusion that requires a lower standard than that of probable cause.[17]

---

[13] U.S. Const. amend. IV; Del. Const. art. I, §6.
[14] *McVaugh v. State*, 2014 WL 1117722, at *2 (Del. Mar. 19, 2024).
[15] *Miller v. State*, 4 A.3d 371,373 (Del. 2010).
[16] *See Terry v. Ohio*, 392 U.S. 1 (1968).
[17] *Id.*

**Analysis**

In support of his argument to suppress the drugs, Roane argues that as a visitor in the home he should not have been handcuffed or searched because he was not the target of probation's administrative search.[18] Defendant relies on *Commonwealth v. Gibson*,[19] a Pennsylvania case, in support of the contention that his detainment exceeded the scope of a probationary search and was therefore unconstitutional. *Gibson*, however, stands for the proposition that furtive movements and nervousness alone do not create reasonable suspicion.[20] That was not the case here. Roane was not searched merely because he was an occupant in the home, nor because he only made furtive movements and appeared nervous. Roane's detention was response to Roane's conduct, which began when he attempted to slip past Barba and, when confronted, shouted at officers in an aggravated state while a single officer was occupied with another at the end of a narrow hallway and at the top of a stairway.

The body worn camera supports the testimony of Barba in that when probation was given permission to enter the house, Brown was in an upstairs bedroom with

---

[18] D.I. 13.

[19] 2025 WL 853905, at *8 (Pa. Super. Mar. 19, 2025) (holding that furtive movements towards one's pants, alone, does not create reasonable suspicion that an individual is engaged in wrongdoing).

[20] *Gibson*, 2025 WL 853905, at *7; *compare with Commonwealth v. Buchert*, 68 A.3d 911, 916-17 (finding a defendant's "furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and [a] night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger") (Pa. Super. 2013).

two unknown individuals. Barba testified he was able to see Brown and others making movements consistent with possibly shoving something into couch cushions.[21] Brown immediately exits the room upon hearing that Probation was in the house and Barba can be heard on his body worn camera asking the individuals what was getting shoved in the couch. Officer Abreu takes Brown into custody and remains with him at the top of the stairs. The stairway itself is narrow and leads to an equally narrow hallway. As seen on the camera footage, which corroborates Barba's testimony, there is not room for multiple people to walk past each other in the hallway or on the stairs.[22]

As Barba enters the room and attempts to get a command on the situation, Roane immediately walked out, towards the only possible direction: where Officer Abreu cuffed Brown at the top of the stairs. Loud yelling and argument is heard on the body worn camera. Barba testified that he requested for Troopers to assist because there were three people and two officers. Barba, facing in the room at the time Roane was exiting, was unable to see Trooper Shaub coming up the stairs to assist. As Roane pushed past Barba, he grabbed Roane who continued to go into the hallway. Upon being grabbed, Roane yelled, "I'm not on probation. You can't grab me." Barba articulated that he was unaware of any other officer having responded

---

[21] D.I. 20.
[22] *Id.*

7

to his call for backup, he knew Abreu was at the top of the stairs taking Brown into custody, and grabbed Roane as he pushed past in a hurry out of concern for Abreu's safety. After a significant amount of yelling ensued, Roane was secured and Shaub conducted a pat down for officer safety. This occurred at the top of the stairs, at which time the drugs were discovered.

As Roane concedes, Delaware law permits officers who are lawfully searching a residence, to detain the occupants while a search is being conducted.[23] As Roane has not challenged the administrative search, nor does he have standing to do so, the analysis begins that the officers were lawfully present in the home to conduct a search. Therefore, the other occupants – Roane and the unknown other male in the room with Roane and Brown – were lawfully detained in order to command control of the environment, ensure officer safety, and preserve the evidence during the search.

Roane, however, created a concern for officer safety. By immediately rushing out of the room into the path of an officer who was taking another into custody at the top of a staircase. As stated, Barba articulated his concern was the reason for grabbing Roane's arm. In looking at the totality of the circumstances, there were two officers who confronted three subjects, one of which was being taken into custody (Brown), one (unknown) who was thought to have been stuffing something

---

[23] *Harris v. State*, 116 A.3d 1243 (Del. 2015).

inside a cushion in the room from which Brown exited, and the last, Roane, who quickly exited the room in an agitated state pushing past Barba headed down a narrow hallway; the hallway which led to the top of the stairs where Brown was in custody with Abreu. Given this, a reasonable officer in Barba's position, and with his experience, would fear for officer safety.[24] Which was evidenced by his call for backup. Under Delaware law, such conduct, taken in its totality, justified Barba grabbing Roane and initiating the detention.

Officers may detain other occupants of a residents where a lawful search is being conducted in the interest of officer safety, "[l]ess obvious, but sometimes of greater importance, is the interest of minimizing the risk of harm to the officers…the risk of harm to both the police and the occupants is minimized if the officers routinely unquestioned command of the situation."[25] Roane's continued resistance and aggressive demeanor created a safety risk.[26] Once properly detained, an officer may conduct a limited pat down for officer safety.[27]

---

[24] *Quarles v. State*, 696 A.2d 1134, 1337 (Del. 1997).
[25] *Michigan v. Summers*, 452 U.S. 693, 702 (1981); *see also Bailey v. United States*, 568 U.S. 186, 193-95 (2013).
[26] *Bailey*, 568 U.S. at 195 ("when law enforcement officers execute a search warrant, safety considerations require that they secure the premises, which may include detaining current occupants. By taking 'unquestioned command of the situation,' the officers can search without fear that occupants, who are on the premises and able to observe the course of the search, will become disruptive, dangerous, or otherwise frustrate the search").
[27] *See Terry*, 392 U.S. 1.

9

Barba's decision to detain and pat down Roane was based upon sufficient reasonable suspicion. The State is correct in that Roane was resisting a detention, and the law makes no distinction as to whether that detention was lawful; he was failing to comply with a law enforcement order.[28] The body worn camera footage supports Shaub's testimony that Roane struggled with Abreu at he top of the stairs, as multiple officers are heard telling Roane that he would not be in trouble if he did not resist. For resisting alone, the law permits further detention and a search incident to arrest.[29] As noted, the pat down revealed one bundle containing 39 grams of heroin in Roane's right jacket pocket, which was immediately apparent to Shaub. Shaub testified that upon patting down Roane, with his nine years of law enforcement experience, and a significant number of those years dedicated to drug investigations, it was immediately apparent that what he felt was heroin.[30] While Roane was resisting, Shaub testified he had been fearful Roane was reaching for a weapon.[31] Once the heroin was discovered, the officers were entitled to conduct a full search of Roane's person, as incident to arrest to locate the 42 grams of crack.

Therefore, Roane's behavior created both reasonable, articulable suspicion regarding both criminal activity and a legitimate fear for officer safety, and once the

---

[28] *See* 11 *Del. C.* §1257.
[29] *Id.* at §1902.
[30] D.I. 20.
[31] *Id.*

heroin was located, the officers were constitutionally permitted to continue their search incident to arrest which led to the discovery of the crack cocaine. Because of this finding, the Court does not need to complete a full analysis with respect to the alternative theory presented by the State of inevitable discovery. However, with Roane having been lawfully detained and an active capias outstanding, the doctrine seemingly applies.

Roane's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge


Original to Prothonotary

cc:   James Turner, Esquire
      Beth Savitz, Esquire